UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 13bk27271 |
| | ) | |
| Violeta Jakovljevic-Ostojic, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court arises out of the court's issuance of an order to show cause (the "Order To Show Cause") as to why the bankruptcy case of debtor Violeta Jakovljevic-Ostojic (the "Debtor") should not be dismissed for cause pursuant to 11 U.S.C. § 707(a). For the reasons set forth herein, this case shall be dismissed pursuant to 11 U.S.C. § 707(a).

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the Bankruptcy Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A motion to dismiss a bankruptcy case may only arise in a case under title 11 and is therefore a core matter in which this court has jurisdiction to enter final orders under 28 U.S.C. § 157(b)(2)(A). *In re Deutscher*, 419 B.R. 42, 43 (Bankr. N.D. Ill. 2009) (Barbosa, J.).

Accordingly, final judgment is within the scope of the court's authority.

PROCEDURAL HISTORY

Before the court is the question of whether the Debtor's chapter 7 bankruptcy case should be dismissed "for cause" under section 707(a) of the Bankruptcy Code. To best understand the matter, it is necessary to understand first the circumstances which led the court to enter the Order To Show Cause.

On July 5, 2013, the Debtor commenced the above-captioned case by filing a petition under chapter 7 of the Bankruptcy Code (the "Petition Date"). On August 22, 2013, a meeting of

creditors (the "341 Meeting") was conducted by the trustee (the "Chapter 7 Trustee"). The following day, the Chapter 7 Trustee filed a "Chapter 7 Trustee's Report of No Distribution" (the "No Asset Report") in the case. The No Asset Report indicated that "there is no property available for distribution from the estate over and above that exempted by law."

Ordinarily, the filing of the No Asset Report will result in a debtor receiving its discharge under section 727(a) of the Bankruptcy Code once the period for objections under Rule 4004(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") has expired. That did not occur here, as before the expiration of that period, Pella Windows & Doors, Inc. ("Pella"), one of the creditors of the Debtor, filed a Motion To Dismiss for Cause (the "Motion To Dismiss") under section 707(b) of the Bankruptcy Code. Pursuant to Rule 4004(c)(1)(D), a discharge may not be entered while a motion to dismiss under section 707 is pending.

The Motion To Dismiss alleged that the Debtor's bankruptcy case constituted an abuse of chapter 7, and thus should be dismissed under section 707(b)(1) of the Bankruptcy Code. Among the abusive aspects of the case alleged by Pella were: (1) significant expenditures by the Debtor on questionable purchases, made immediately prior to the commencement of the case and after Pella had served the Debtor with a citation to discover assets, (2) undisclosed payments to family members made within the year preceding the case and (3) an excessive and unreasonable proposed budget, particularly with respect to the high housing expense.

The court conducted several hearings on the Motion To Dismiss. On November 12, 2013, the court conducted an initial hearing and set a briefing schedule on the Motion To Dismiss. After the conclusion of briefing, the court on December 17, 2013 conducted a second hearing and determined that an evidentiary hearing was necessary. That hearing was scheduled for January 27, 2014.

Prior to the evidentiary hearing, the Debtor obtained the assistance of new counsel. With the assistance of new counsel, the Debtor amended her Schedules F, I and J. She also amended her bankruptcy Petition, to indicate that her debts were primarily business debts, not consumer ones. Those amendments, discussed in more detail below, were made in the week prior to the evidentiary hearing, the last being filed just two business days before the hearing. In light of the late-filed amendments to the Schedules and Petition, the court continued the hearing on the Motion To Dismiss that was scheduled for January 27, 2014 to March 3, 2014. Prior to the March 3, 2014 hearing, the Debtor amended her Schedule F.

On March 3, 2013, the court considered the Motion To Dismiss on its merits. Because the Debtor's amendments had changed the nature of the Debtor's debts from primarily consumer to primarily business debts, the court determined that a ruling on the merits of the Motion To Dismiss was procedurally forestalled. The court therefore denied the Motion To Dismiss but, because the amendments not only fundamentally changed the nature of the Debtor's debts but also added creditors well beyond the deadline to object to the Debtor's discharge under Bankruptcy Rule 4004, the court on its own motion entered the Order To Show Cause to join the issue of whether the Debtor's actions had not given rise for dismissal "for cause" under section 707(a) of the Bankruptcy Code.

In considering the Order To Show Cause, the court has considered the arguments of the parties at the hearings on the Order To Show Cause that took place on April 28, 2014, June 17, 2014

and August 26, 2014 and the hearings on the Motion To Dismiss (collectively, the "Hearings"), as well as the evidence adduced at the Hearings, and has reviewed and considered the following filed documents in the bankruptcy case:

(1) Chapter 7 Voluntary Petition [Docket No. 1];

(2) Schedules A,B,C,D,E,F,G,I, and J [Docket No. 15];

(3) The Debtor's Statement of Financial Affairs [Docket No. 16];

(4) Pella's Motion To Dismiss [Docket No. 33];

(5) The Debtor's Response to Motion To Dismiss [Docket No. 37];

(6) Pella's Reply to Debtor's Response to Motion To Dismiss [Docket No. 39];

(7) Amended Schedules I and J [Docket No. 44];

(8) Amended Petition, Schedules, and Statement of Current Monthly Income [Docket No. 48];

(9) Amended Schedule F [Docket No. 53];

(10) Order Denying Motion To Dismiss [Docket No. 58];

(11) Pella's Statement of Position on Order To Show Cause [Docket No. 60];

(12) The Debtor's Response to Order To Show Cause [Docket No. 62];

(13) Pella's Reply to Debtor's Response to Order To Show Cause[Docket No. 63];

(14) Amended Summary of Schedules, Amended Schedules, and Amended Statement of Financial Affairs [Docket No. 69];

(15) The Debtor's Supplemental Response to Order To Show Cause [Docket No. 79];

(16) Pella's Response to the Debtor's Supplemental Response to Order To Show Cause [Docket No. 80]; and

(17) The Debtor's Reply to Order To Show Cause [Docket No. 82].

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (authorizing a bankruptcy court to take judicial notice of its own docket).

BACKGROUND

The Debtor is a real estate broker who also engaged in real estate development for several years prior to filing for bankruptcy. In that latter capacity, the Debtor apparently personally incurred and/or personally guaranteed a number of the real estate development debts. As a result of nonpayment to Pella of such debts, Pella obtained a judgment from the Circuit Court of Cook County against the Debtor on a personal guarantee in the amount of $36,383.00 on January 30, 2013. Subsequently, as a result of post judgment collection actions by Pella, Pella obtained a citation to discover assets (the "Citation"). The Citation was served on the Debtor "as provided by law" and the Debtor was required to appear before the Circuit Court of Cook County on May 9, 2013 to answer and respond to the Citation. (*See* Motion To Dismiss, Exh. 1 (Order of the Circuit Court of Cook Country)). On May 9, 2013, the Circuit Court of Cook County entered an order for rule to show cause why the Debtor should not be held in civil contempt of court for failure to appear before the court on that day to respond to the Citation. (*Id.*).

On July 4, 2013, one day prior to filing this case, the Debtor met with Karen Anderson ("Anderson") and Gregory Hilton ("Hilton") at Hilton's office for several hours, during which time she discussed her debts and other pertinent information related to filing for bankruptcy. The Debtor signed her initial bankruptcy Petition (the "Initial Petition") during that meeting.

On July 5, 2013, Hilton commenced the Debtor's above-captioned case under chapter 7 of the Bankruptcy Code by filing the Initial Petition with the court. The Initial Petition indicated that the nature of the Debtor's debts was consumer rather than business.

On July 18, 2013, Hilton filed the Debtor's Schedules (the "Initial Schedules") and statement of financial affairs (the "Initial Statement of Financial Affairs"). [Docket Nos. 15 and 16, respectively].[1] The Initial Schedules do not indicate that they were electronically signed by the Debtor, while the Initial Statement of Financial Affairs does contain the Debtor's electronic signature. Neither document, however, was accompanied by a Declaration Regarding Electronic Filing containing the Debtor's original signature as mandated by Part II.C of the Administrative Procedures for the Case Management/Electronic Case Filing System for the Bankruptcy Court of the Northern District of Illinois. Schedule F of the Initial Schedules listed Pella as holding an unsecured nonpriority claim in the amount of $36,383.00. Pella's claim was not scheduled as disputed, unliquidated or contingent.

On August 22, 2013, the Debtor attended the 341 Meeting conducted by the Chapter 7 Trustee, at which she was represented by Anderson. The 341 Meeting was attended by Pella's counsel. At the meeting, the Debtor responded to the Chapter 7 Trustee's questions as follows:

> Q. I'm showing you bankruptcy petition declaration, schedules and statement of affairs. Did you see these papers before?
>
> A. Yes.

---

[1] For the sake of clarity, when writing without need for differentiation, the court will refer generally to these documents as the Petition and the Schedules, and use the more specific terms when necessary to differentiate.

> Q. Is this your signature?
>
> A. Yes.
>
> Q. Did you read —
>
> A. That's not my signature, sir. I'm so sorry. That's my signature.
>
> Q. This is your signature?
>
> A. Yes, yes.
>
> Q. Did you read the schedules and statement of affairs before you signed your petition?
>
> A. Yes.
>
> Q. Is all the information true and correct?
>
> A. Yes.
>
> Q. Do you need to change anything or add anything at this time?
>
> A. No.

(Transcript of 341 Meeting, at pp. 4-5). Following the 341 Meeting, the Chapter 7 Trustee filed the No Asset Report on August 23, 2013.

On October 22, 2013, Pella filed the Motion To Dismiss, seeking to dismiss the Debtor's case under section 707(b) for abuse based on the totality of the circumstances.

As noted above, approximately one week before the scheduled hearing on the Motion To Dismiss, the Debtor retained Julia Smolka ("Smolka") as additional bankruptcy counsel in the case.[2] On January 20, 2014, the Debtor, through Smolka, filed amended Schedules I and J. Shortly thereafter, on January 23, 2014, six months after filing the petition and only two business days prior to the hearing on the Motion To Dismiss, the Debtor filed an amended petition (the "Amended Petition"), an amended Statement of Current Monthly Income and Means Test Calculation, and further amended Schedules F and J (together with the January 20, 2014 amendments, the "Amended Schedules"). [Docket No. 48]. The Amended Schedules reflected the addition of ING and JP Morgan Chase Bank — the now largest unsecured creditors in this case — as well as an increase of unsecured debt from $267,006.00 to $1,132,497.11. The Amended Schedules also reclassified numerous debts, including Pella's, from consumer to business, thereby changing the nature of the Debtor's debt from consumer to business. In addition, Schedule J of the Amended Schedules — just like Schedule J of the Initial Schedules — reflected a rent or mortgage expense of $3,800.

In light of the late-filed amendments to the Schedules, the court continued the hearing on the Motion To Dismiss that was scheduled for January 27, 2014. On February 18, 2014, the Debtor

---

[2] Smolka entered an appearance in this case on January 17, 2014. As of the date of this Memorandum Decision, Anderson and Hilton have not withdrawn and, thus, also remain the Debtor's counsel.

5

again amended her Schedule F, which, among other changes, increased Pella's claim to $37,773.52 and decreased the overall unsecured debt to $1,077,674.00. [Docket No. 53].

The court held a hearing on the Motion To Dismiss on March 3, 2014. Following the hearing, the court denied the Motion To Dismiss because the Debtor's Amended Schedules changed the nature of her debts from consumer to business, which rendered section 707(b) inapplicable. However, the issues raised at the hearing on March 3, 2014 prompted the court to enter this Order To Show Cause as to why this case shall not be dismissed for cause pursuant to section 707(a) of the Bankruptcy Code, mainly how the Debtor's late amendments might have caused an unreasonable delay that was prejudicial to creditors.

The hearing on the Order To Show Cause was held on August 28, 2014. At the hearing, the court questioned the Debtor regarding the consistency of the $3,800 a month mortgage expense listed on her most recent Schedule J in the Amended Schedules with the facts at bar, including that Wells Fargo Bank, the mortgagee on the property, was granted relief from stay on July 24, 2013 upon its allegation that the Debtor had not made payments in sixty-one months, the Debtor's testimony that her residence was in foreclosure at the time the petition was filed, and that she stopped making mortgage payments prior to filing this case. The Debtor further testified that at the time of the hearing, her home had already been sold in foreclosure.

The court set a briefing schedule on the Order To Show Cause and, in light of the Debtor's allegations that problems with her Initial Petition and Initial Schedules resulted from unauthorized acts by Anderson and Hilton, granted the Debtor leave to seek discovery from Anderson and Hilton. Following the hearing, on May 9, 2014, the Debtor yet again amended her Schedules E and J and statement of financial affairs (the "Second Amended Schedules"). [Docket No. 69].

## APPLICABLE STANDARDS

Chapter 7 of the Bankruptcy Code permits a bankruptcy court to dismiss a case "for cause" under section 707(a). That section provides, in pertinent part, that:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including –

(1) Unreasonable delay by the debtor that is prejudicial to creditors....

11 U.S.C. § 707(a).

Section 105(a) empowers a bankruptcy court to move, *sua sponte*, to dismiss a debtor's bankruptcy case for cause under section 707(a). Section 105(a) provides as follows:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11. U.S.C. § 105(a). *See In re Sekendur*, 334 B.R. 609, 617 (Bankr. N.D. Ill. 2005) (Schmetterer, J.) (dismissing the case both on court's motion *sua sponte* under section 707(a)(2) for nonpayment of filing fees and creditor's motion under section 707(a)); *see also In re Jones*, No. 90-11404, 1990 WL 300922, at *1 (Bankr. N.D. Ind. Sept. 13, 1990) (finding that pursuant to section 105(a), "the bankruptcy court may dismiss cases *sua sponte* where to do [so] perpetuates the proper use of the bankruptcy mechanism") (internal quotations and citation omitted); *Kestell v. Kestell (In re Kestell)*, 99 F.3d 146, 149 (4h Cir. 1996); *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 869 (B.A.P. 9th Cir. 2004) ("The court can dismiss a case sua sponte under Section 105(a).") (citing cases).

"The enumerated grounds for a 'for cause' dismissal are not exhaustive, but merely illustrative." *Novak v. Wagnitz (In re Wagnitz)*, No. 03C5106, 2004 WL 626821, at *3 (N.D. Ill. Mar. 29, 2004); *see also Sekendur*, 334 B.R. at 618.

Courts that have considered whether bad faith is a ground for dismissal "for cause" under section 707(a) have reached conflicting conclusions. The Third and Sixth Circuit Courts of Appeals have adopted a lack of good faith as a basis to dismiss a case for cause under section 707(a), *see Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207 (3rd Cir. 2000); *Indus. Ins. Servs, Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1127 (6th Cir. 1991), while the Ninth and Eighth Circuit Courts of Appeals have rejected this approach. *See Sherman v. Sec. and Exch. Comm'n (In re Sherman)*, 491 F.3d 948, 970 (9th Cir. 2007); *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 832 (8th Cir. 1994).

While the Seventh Circuit has not yet addressed the issue of dismissal "for cause" under section 707(a), the majority of district and bankruptcy courts in this Circuit have concluded that bad faith – or a lack of good faith – supports a "for cause" dismissal. *See, e.g., Sec. America v. Tallman (In re Tallman)*, 417 B.R. 568, 575 (N.D. Ind. 2009); *Sekendur*, 334 B.R. at 619; *In re Am. Telecom Corp.*, 304 B.R. 867, 869 (Bankr. N.D. Ill. 2004) (Cox, J.); *In re Collins*, 250 B.R. 645, 653 (Bankr. N.D. Ill. 2000) (Katz, J.). *But see In re Adolph*, 441 B.R. 909, 911 (Bankr. N.D. Ill. 2011) (Goldgar, J.). Generally, the bad faith inquiry looks at the totality of the circumstances. *See Sekendur*, 334 B.R. at 618-19; *Am. Telecom Corp.*, 304 B.R. at 869; *Collins*, 250 B.R. at 653-54. Further, for a finding of a lack of good faith, a court is not required to find that the debtor had fraudulent or malicious intent when filing. *Am. Telecom Corp.*, 304 B.R. at 869 (*citing Leavitt v. Soto (In re Leavitt)*, 209 B.R. 935, 940-41 (B.A.P. 9th Cir. 1997)).

The determination of whether cause exists to dismiss a case under section 707(a) lies within the sound discretion of the bankruptcy court. *Smith v. Geltzer (In re Smith)*, 507 F.3d 64, 73 (2d Cir. 2007); *see also In re Cochonour*, No. 06-60031, 2010 WL 1286752, at *1 (Bankr. S.D. Ill. Mar. 29, 2010).

## DISCUSSION

The issue before the court is whether the Debtor's actions demonstrate a lack of good faith and whether such actions have resulted in an unreasonable delay that is prejudicial to creditors.

It is well established that bankruptcy is for the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 287 (1991). Debtors earn a discharge by complying with deadlines and making honest and prompt disclosures required under the Bankruptcy Code. This is because the "successful functioning of the Bankruptcy Code hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 496 (7th Cir. 2007) (*quoting In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974)).

7

A debtor has an affirmative duty to fully disclose "all assets and liabilities and to answer all questions pertaining to his/her financial affairs fully and with the utmost candor." *Carto v. Oakley (In re Oakley)*, 503 B.R. 407, 424 (Bankr. E.D. Pa. 2013) (internal citations and quotations omitted). Complete disclosure of a debtor's assets and liabilities is necessary in order to provide reliable information to those who have an interest in the administration of the estate. *See Manning v. Watkins (In re Watkins)*, 474 B.R. 625, 635 (Bankr. N.D. Ind. 2012), *aff'd* 212-CV-489, 2013 WL 3989412 (N.D. Ind. July 31, 2013) (*citing Bensenville Community Center Union v. Bailey (In re Bailey)*, 147 B.R. 157, 163 (Bankr. N.D. Ill. 1992)). "A debtor's duty to ensure the accuracy and completeness of his schedules is one which continues throughout the bankruptcy case .... Thus, errors in previously filed schedules must be corrected." *In re Varan*, No. 11 B 44072, 2014 WL 2881162, at *7 (Bankr. N.D. Ill. June 24, 2014) (Cassling, J.) (internal citations omitted).

To ensure complete and accurate disclosure, it is critical that bankruptcy debtors review the petition, schedules and statement of financial affairs prior to signing such documents under penalty of perjury. As observed by the Bankruptcy Appellate Panel of the Ninth Circuit:

> Schedules and statements of financial affairs are sworn statements, signed by debtors under penalty of perjury. Adopting a cavalier attitude toward the accuracy of the schedules and expecting the court and creditors to ferret out the truth is not acceptable conduct by debtors or their counsel.

*AT&T Universal Card Servs. Corp. v. Duplante (In re Duplante)*, 215 B.R. 444, 447 n.8 (B.A.P. 9th Cir. 1997).

A debtor's compliance with the requirements of the Bankruptcy Code is therefore essential in order to receive the protections afforded in bankruptcy.

A.   The Debtor's Lack of Good Faith

   1. Deficiencies in the Initial Schedules

"A debtor's lack of candor or completeness in filing schedules" is certainly an indication of bad faith. *See Harn v. Deaton (In re Deaton)*, 91-40498, 1992 WL 12001875, at *3 (Bankr. S.D. Ga. Oct. 2, 1992); *see also In re Hammonds*, 139 B.R. 535, 542 (Bankr. D. Colo. 1992).

There is no dispute that there were deficiencies in the Initial Schedules. A significant amount of debt was missing from the Initial Schedules, as the Amended Schedules show a dramatic increase of unsecured debt from $267,006.00 to $1,132,497.11 and the addition of the now largest creditors that were not included in the Initial Schedules. The Initial Petition and Initial Schedules disclosed that the Debtor's debt was primarily consumer in nature, a disclosure that the Debtor later sought to disclaim.

With regard to the Initial Schedules, the Debtor contends that: (1) neither Anderson nor Hilton provided her with a copy of the Initial Schedules so that she could review them before they were filed, (2) she never verified the Initial Schedules and (3) neither Anderson nor Hilton provided her with a copy of the Initial Schedules after they were filed. (Debtor's Resp. to Order To Show Cause, Debtor's Decl. at ¶¶ 15 and 17) [Docket No. 62]. The Debtor asserts that the first time she saw the Initial Schedules was at the 341 Meeting when the Chapter 7 Trustee was going through them while asking her questions. (*Id.* at ¶ 16). The deposition testimony of Anderson and Hilton is

8

not necessarily contrary to the Debtor's assertion with respect to this issue. At their depositions, Anderson and Hilton claimed that they were unable to recall whether the Debtor verified the Initial Schedules or if and when they provided the Debtor with a copy of the Initial Schedules. Thus, the evidence is not clear in this regard, but at the very least, the Debtor's position is not foreclosed. The Debtor's position is consistent with the fact that the Initial Schedules as filed were not accompanied by the required Declaration Regarding Electronic Filing containing the Debtor's original signature.

Even assuming the veracity of the Debtor's unquestionably self-serving position in this regard, the Debtor's failure to verify the Initial Schedules as the Debtor was required to do, see Fed. R. Bankr. P. 1008, raises as many questions as it answers. As discussed below, the Debtor is accountable for the errors in her Initial Schedules, whether or not she complied with her obligation to verify them. In addition, numerous other factors weigh in favor of dismissal of the Debtor's case for cause.

2. Testimony at the 341 Meeting

One of the questions raised by the Debtor's failure to verify her Initial Schedules is how her present position regarding those Schedules comports with her testimony at the 341 Meeting.

A debtor's 341 meeting is critical for the proper administration of the debtor's case. Not only do the debtor's disclosures prior to the meeting form the basis for the inquiry, but those combined with the testimony of the debtor are relied upon by creditors and the chapter 7 trustee. Testimony at a 341 meeting, which is provided under penalty of perjury, cannot be taken lightly by debtors.

At the Debtor's 341 Meeting, the Debtor was questioned under penalty of perjury by the Chapter 7 Trustee. In response to the Chapter 7 Trustee's question regarding whether the Debtor read the Initial Schedules and Initial Statement of Financial Affairs before signing the Initial Petition, the Debtor unequivocally responded "Yes." When asked whether such documents were true and correct, the Debtor once again was unequivocal, responding "Yes."

The Debtor now contends that she did not review the Initial Schedules before they were filed. This contention is self-serving and fails to provide a valid justification for the Debtor's actions.

The Debtor also appears to absolve herself of responsibility for the inaccuracies in her Initial Schedules by shifting responsibility to her attorneys. The existing case law in this jurisdiction is clear, however, that "[t]he [d]ebtor cannot rely on the advice of counsel defense regarding errors in the Schedules where the [d]ebtor has declared under penalty of perjury that he has read the Schedules, and to the best of his knowledge they were true and correct." *Davis, Mannix & McGrath v. Fawell (In re Fawell)*, 98 B 01274, 1999 WL 569449, at *14 (Bankr. N.D. Ill. July 26, 1999) (Squires, J.); *see also In re Stone*, 504 B.R. 908, 913 (Bankr. C.D. Ill. 2014) ("Debtors are personally responsible for the accuracy of the information contained in their schedules whether or not they have been assisted by counsel."). A debtor may not shirk its responsibility to determine what is or is not appropriately put forth on its schedules.

9

The court finds that the Debtor has either provided false testimony at the 341 Meeting or did in fact approve her Initial Schedules. In either case, the Debtor is responsible for her actions in this regard.

3. Inflated and Extravagant Expenses

In determining whether to dismiss a debtor's bankruptcy case based upon the debtor's lack of good faith, a bankruptcy court may consider the reality of the debtor's financial situation, including ability to repay debts. *See Perlin v. Hitachi Capital America Corp.*, 497 F.3d 364, 374 (3rd Cir. 2007). Likewise, inflation of a debtor's expenses to disguise his or her financial well-being is a factor to be considered in determining whether the petition was filed in bad faith. *See In re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008); *see also In re Cappuccetti*, 172 B.R. 37, 39 (Bankr. E.D. Ark. 1994).

Here, the Debtor's Schedule J of the Initial Schedules was materially inaccurate for nearly a year, as it reflected a monthly mortgage expense of $3,800. This inaccuracy should have been apparent to the Debtor from the beginning. The Debtor testified at the hearing on the Order To Show Cause that her residence was in foreclosure at the time the petition was filed, and that she had stopped making mortgage payments five years prior to filing for bankruptcy. The court granted the bank relief from stay on July 24, 2013, and the Debtor testified that her home had already been sold in foreclosure at the time of the hearing. The Debtor further testified that she was close to securing new housing for $1,800, which is a significant decrease from the $3,800 housing expense that remained listed on Schedule J that was on file at the time of the hearing.[3]

And yet, up to and including the hearing on the Order To Show Cause, the Debtor continued to take the position through her disclosures that this obligation was ongoing and therefore reduced her ability to pay creditors. Despite having amended other of her disclosures and twice amending her Schedule K, it was only after the court expressed its concern about additional inaccuracies in the Schedules that the Debtor filed the Second Amended Schedules, of which Schedule J reflects $0 for rent and home mortgage payment. Schedule J of the Second Amended Schedules, however, continues to reflect a monthly "condo assessment" expense of $350, which is baffling to the court given the Debtor's testimony that her home was sold in foreclosure. Such inaccuracies give the court cause for concern regarding the lack of full disclosure in the Debtor's most recent Schedules.

The Debtor's failure to provide accurate disclosure with regard to her rent or home mortgage payment cannot be excused. That she ignored this glaring inaccuracy, only fixing it once it was caught by the court, is a sign of indifference at best, deceit at worst.[4]

---

[3]     When Pella questioned her disproportionately high housing expenses, the Debtor, in partial response, argued that because her husband and two sons were all over six feet tall, she needed the spacious house and thus the expense. (Debtor's Response to Motion To Dismiss, at ¶ 4).

[4]     When questioned regarding this, the Debtor through her counsel appeared to take the position that she had concentrated solely on correcting those issues that had been raised in the Motion To Dismiss and the Order To Show Cause. Such an approach is entirely inconsistent with the Debtor's position that the Initial Schedules had not been reviewed or approved by her. If that position were indeed the case, the Debtor had an obligation to review each and every disclosure anew and make amendments as necessary.

The series of transactions engaged in by the Debtor in the 3-4 months prior to the filing of her bankruptcy petition is also problematic. While these transactions – totaling approximately $3,000 – were characterized by the Debtor as "everyday living expenses," Pella rightly expressed concern over their propriety in the Motion To Dismiss. For example, the Debtor stated that she paid $318 for two pairs of new sneakers for her stepsons because they were competing in a tournament. There was no indication by the Debtor that this was a necessary, rather than an extravagant, expense.

The Debtor has failed to persuade the court that the foregoing expenses, taken as a whole, were necessary rather than discretionary and extravagant.

4. Payments to Insiders

The statement of financial affairs mandated in bankruptcy cases requires all individual debtors – whether their debts are primarily consumer or business – to disclose all payments made within one year prior to the filing of the bankruptcy case to creditors who are insiders. A debtor's repayment of debts to such insiders has been considered a factor that can support dismissal under section 707(a). *See, e.g., In re Mottilla*, 306 B.R. 782, 790 (Bankr. M.D. Pa. 2004) (*citing In re Spagnolia*, 199 B.R. 362, 365 (Bankr. W.D. Ky. 1995)).

Here, the Debtor admits that she failed to disclose in her Initial Statement of Financial Affairs payments to family members that were made within a year of her bankruptcy filing. The Debtor states that these payments were on account of two personal loans in the amount of $2,000 and $2,500, respectively. Her failure to disclose the repayment of these loans is an additional factor militating in favor of dismissal.

While these payments may not be recoverable,[5] the court is troubled by their omission from the Initial Statement of Financial Affairs. The disclosure of these payments was mandatory.

The court understands that there may be occasional innocent errors and omissions. There comes a point, however, when such errors and omissions "are simply too numerous and substantial to overlook." *See Fawell*, 1999 WL 569449, at *13. Such is the case here. The Debtor's pattern of behavior cannot be ignored. The Debtor has repeatedly erred in her actions in a way that supports an extravagant lifestyle while at the same time evidencing a cavalier attitude toward her creditors and the court.

For all of these reasons, the court finds that the instant case has been filed and prosecuted in bad faith by the Debtor.

---

[5] Given that the Debtor now takes the position that her debts are primarily business debts, these payments appear to fall below the statutory limits for recovery of preferences, whether or not to insiders. *See* 11 U.S.C. § 547(c)(9). As discussed below, however, the timing of the Debtor's disclosure denies the Chapter 7 Trustee and other creditors a full and fair opportunity to examine the propriety of the payments and act accordingly – under preference law or an alternative theory of recovery.

11

Document      Page 12 of 13

B.    Unreasonable Delay Prejudicial to Creditors

Even if the Debtor's lack of good faith in filing this case were not by itself sufficient to provide cause for dismissal, an enumerated cause listed in section 707(a)(1) is present in this case. This section provides for dismissal of a case upon a finding of unreasonable delay by the debtor that is prejudicial to creditors. 11 U.S.C. § 707(a)(1).

Here there is no doubt that there has been a delay as a result of the Debtor's actions in this case. Material amendments to the Initial Petition and the Initial Schedules were made six months or more after they were filed, and only after Pella or the court caused the Debtor to respond to the Motion to Dismiss. Given the length of this delay and the Debtor's testimony at the 341 Meeting that the Initial Petition, Initial Schedules and Initial Statement of Financial Affairs were accurate, the court finds that this delay was unreasonable.

This unreasonable delay has been prejudicial to creditors. The amendments at issue – including adding for the first time creditors holding extraordinarily large claims and more than quadrupling the total unsecured debt – were made well after the Chapter 7 Trustee had finished conducting the 341 Meeting and had concluded based on the initial disclosures that there were no assets to be administered for the benefit of creditors. This denied both the Chapter 7 Trustee and creditors a full and fair opportunity to examine the Debtor other than on disclosures that the Debtor now claims were false.

Further, the amendments to the Debtor's disclosures two months or more after the expiration of the time period for creditors to object to the dischargeability of debts under section 523 of the Bankruptcy Code, and approximately three months following the deadline for the United States Trustee and creditors to object to the Debtor's discharge under section 727 of the Bankruptcy Code. By the passage of these critical deadlines, parties in interest such as Pella were certainly prejudiced in making a proper assessment of whether to object to dischargeability or seek denial of the Debtor's discharge. Newly added creditors had no opportunity at all to exercise these remedies.

Therefore, the court finds that the delay in this case is unreasonable and prejudicial to all creditors.

As to Pella, the delay has been even more prejudicial and unreasonable. Pella elected to pursue dismissal under section 707(b) instead other possible remedies. While it may have been provident to seek alternative remedies, given the disclosures extant at that time, the court cannot fault Pella in its choice. It was through Pella's efforts in bringing its Motion To Dismiss that the inaccuracies in the Initial Schedules were revealed and there was every indication that, given the Debtor's prepetition actions and postpetition disclosures, the court would dismiss the case under section 707(b). Pella invested calculable time and effort in pursuing the Motion To Dismiss, only to have those efforts go for naught with the Debtor's last minute revisions.

By changing her disclosures on the eve of the hearing on Pella's Motion To Dismiss, the Debtor set into motion an even more time and effort intensive inquiry by Pella and the court. The inquiry yielded even more problems than were identified in the Motion To Dismiss.

The circumstances of this case compel dismissal. While it appears that Anderson and Hilton may be the source of some of the disclosure problems that occurred in this case, the Debtor remains

responsible and must be held accountable for her and her counsel's actions and inactions such as prompt amendments. Thus, the court finds that "cause" for dismissal exists pursuant to section 707(a).

## CONCLUSION

For the foregoing reasons, this case will be dismissed for cause under section 707(a). A separate order to that effect will be entered concurrent with this Memorandum Decision.

Dated: September 17, 2014

_____
Timothy A. Barnes
United States Bankruptcy Judge